No. 12-4532

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**UNITED STATES OF AMERICA,**

**Appellee,**

**v.**

**GREGORY DAVID HORNE,**

**Appellant.**

*Appeal from the United States District Court for the*
*District of Maryland, Northern Division*
*Honorable James K. Bredar, District Judge*

## BRIEF OF APPELLEE
## UNITED STATES OF AMERICA

**Rod J. Rosenstein**
**United States Attorney**

**Ayn B. Ducao**
**Assistant United States Attorney**

**36 South Charles Street**
**Baltimore, Maryland 21201**
**(410) 209-4800**

**May 6, 2014**                    *Attorneys for the Appellee*

# TABLE OF CONTENTS

STATEMENT OF JURISDICTION ........................................................1

STATEMENT OF THE ISSUE ............................................................1

STATEMENT OF THE CASE.............................................................1

STATEMENT OF FACTS .................................................................3

    I.     JULY 2011 SUBMISSION AND HEARING BEFORE
          THE DISTRICT COURT REGARDING POTENTIAL
          CONFLICT OF INTEREST ...............................................3

    II.    SEPTEMBER 2011 MOTION TO DISQUALIFY
          RAVENELL AND OCTOBER 2011 HEARING BEFORE
          THE DISTRICT COURT.................................................5

    III.   GUILTY PLEA AND SENTENCE....................................9

SUMMARY OF ARGUMENT .........................................................11

ARGUMENT .............................................................................12

    I.     THE DISTRICT COURT PROPERLY EXERCISED ITS
          DISCRETION IN DISQUALIFYING ATTORNEY RAVENELL...12

          A.   Standard of Review ..................................................12

          B.   The District Court Properly Exercised Its
                Discretion to Disqualify Attorney Ravenell
                Where Ravenell Had a Potential Conflict of
                Interest That Potentially Could Have
                Burgeoned into an Actual Conflict of Interest,
                Based on Ravenell's Prior Representation of
                the Defendant's Brother, Tony Horne ........................12

CONCLUSION ...........................................................................22

STATEMENT REGARDING ORAL ARGUMENT ............................................24

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## CASES

*Hoffman v. Leeke*, 903 F.2d 280 (4th Cir. 1990) ....................................................20

*Mannhalt v. Reed*, 847 F.2d 576 (9th Cir. 1988) ...............................................20, 21

*United States v. Alfonzo-Reyes*, 592 F.3d 280 (1st Cir. 2010)...........................18, 20

*United States v. Basham*, 561 F.3d 302 (4th Cir. 2009) ...................................16, 19

*United States v. Cain*, 671 F.3d 271 (2d Cir. 2012) .........................................17, 20

*United States v. Clarkson*, 567 F.2d 270 (4th Cir. 1977) .......................................20

*United States v. Cunningham*, 672 F.2d 1064 (2d Cir. 1982) ...........................20, 21

*United States v. Evanson*, 584 F.3d 904 (10th Cir. 2009) .......................................19

*United States v. Fowler*, 491 Fed. Appx. 453 (4th Cir. 2012)................................17

*United States v. Gharbi*, 510 F.3d 550 (5th Cir. 2007) ..........................................18

*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)..........................................12

*United States v. Howard*, 115 F.3d 1151 (4th Cir. 1997)...........................14, 15, 19

*United States v. Self*, 681 F.3d 190 (3d Cir. 2012) .................................................17

*United States v. Shepperson*, 739 F.3d 176 (4th Cir. 2014) ...................................19

*United States v. Stanley*, 256 Fed. Appx. 583 (4th Cir. 2007) ...............................17

*United States v. Swafford*, 512 F.3d 883 (6th Cir. 2008) .......................................18

*United States v. Turner*, 594 F.3d 946 (7th Cir. 2010)...........................................18

*United States v. Urutyan*, 564 F.3d 679 (4th Cir. 2009)..............................12, 17, 19

*United States v. Williams*, 81 F.3d 1321 (4th Cir. 1996)..................................*passim*

*United States v. Williams*, 439 Fed. Appx. 254 (4th Cir. 2011) ..............................17

*Wheat v. United States*, 486 U.S. 153 (1988) ....................................................*passim*

## STATUTES

21 U.S.C. § 841(a) .................................................................................2, 10

21 U.S.C. § 846....................................................................................2, 9

28 U.S.C. § 1291 ..................................................................................1, 3

18 U.S.C. § 3231 ......................................................................................1

████████████████████████████████████████████████████

18 U.S.C. § 922(g) .....................................................................................2

18 U.S.C. § 924(c) ..................................................................................2, 9

████████████████████████████████████████████████████

## STATEMENT OF JURISDICTION

The district court (James K. Bredar, J.) had jurisdiction over this federal criminal case pursuant to 18 U.S.C. § 3231.  On June 28, 2012, the district court entered a final judgment, which the clerk of the court docketed the same day.  JA 106-11.[1]  This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court properly exercised its discretion to disqualify one of the defendant's retained lawyers, where (1) that attorney previously had represented ███████████████████████████████████ ████████████████████████████████████████████ ██████████████, and (3) the district court expressed deep concern about retained counsel being able to provide representation to the defendant that was free from conflict?

## STATEMENT OF THE CASE

On February 24, 2011, a federal grand jury returned an indictment charging the defendant, as well as several others, with conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, Schedule II controlled

---

[1]     References to the Joint Appendix will be cited as "JA," followed by the page number.  References to the defendant's opening brief will be cited as "Def. Br." followed by the page number.

substances, in violation of 21 U.S.C. § 846; conspiracy to distribute and possess with intent to distribute heroin, a Schedule I controlled substance, in violation of 21 U.S.C. § 846; and conspiracy to distribute and possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 846. JA 21-30.

On June 7, 2011, the grand jury returned a superseding indictment against the defendant and others. In addition to charging conspiracies to distribute and possess with intent to distribute cocaine and cocaine base, heroin, and marijuana, the superseding indictment charged the defendant with possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a); possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c); and being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g). JA 31-46.

On January 10, 2012, the defendant pled guilty to conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). JA 59, 61-63. This guilty plea was entered into pursuant to a plea agreement dated December 30, 2011. JA 65, 47-58,

231-34.[2]  The plea agreement contained a statement of facts agreed to under oath by the defendant, and included a discussion of the defendant's being supplied with cocaine by his supplier at East Coast Customs, the defendant's auto shop located in Glen Burnie, Maryland, as well as an admission that heroin, a firearm, money, and drug paraphernalia were recovered from East Coast Customs.  JA 55-58.

On June 28, 2012, the district court sentenced the defendant to a total term of imprisonment of 188 months, along with five years of supervised release.  JA 107-08.  This timely appeal followed.

## STATEMENT OF FACTS

## I.     JULY 2011 SUBMISSION AND HEARING BEFORE THE DISTRICT COURT REGARDING THE POTENTIAL CONFLICT OF INTEREST

The defendant was represented in the district court by Creston Smith, Esq. and Kenneth W. Ravenell, Esq., until the district court disqualified Ravenell.  JA 1-2.  The defendant had privately retained both attorneys.  JA 1-2.[3]  By letter dated

---

[2]      This plea agreement contained a provision that the defendant waived all rights pursuant to 28 U.S.C. § 1291.  JA 51.  This appellate waiver is the subject of the government's previously-filed motion to dismiss the defendant's appeal. Notwithstanding the arguments made herein, the government continues to believe that the most appropriate disposition of this appeal is dismissal, based on the appeal waiver.

[3]      The defendant had been briefly represented at the beginning of the case by another appointed attorney prior to the appearance of retained counsel.  JA 1.

July 19, 2011, government counsel advised the district court of a potential conflict

for Ravenell due to Ravenell's prior representation of ███████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████. JA 115.  The

government revealed that, in connection with its ongoing investigation, █████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████. JA 115.

The government also described jail calls from the defendant to █████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████. JA 115-16.  The government closed its letter by indicating that Ravenell

had disclosed his prior representation of █████████ to the government but that

Ravenell had indicated that he did not believe it gave rise to a conflict.  JA 116.

The district court held a hearing on July 29, 2011.  JA 117-61.  Parts of this

hearing were held *ex parte* with government counsel.  JA 127-39.  During that *ex*

*parte* portion, government counsel advised the court that another potential issue

with Ravenell's representation of the defendant had emerged, namely, that if the

███████████████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████.  JA 144-45.  The district court

indicated that it had "grave concerns about this situation" but that it would not *sua*

*sponte* order Ravenell's removal absent a motion by the government.  JA 156.

## II.    SEPTEMBER 2011 MOTION TO DISQUALIFY RAVENELL AND OCTOBER 2011 HEARING BEFORE THE DISTRICT COURT

On September 28, 2011, the government filed a motion to disqualify

Ravenell as counsel for the defendant.  JA 162-67.  In that motion, the government

argued that Ravenell had a potential conflict of interest in representing the

defendant based on Ravenell's prior representation of █████████, due to the fact

that there was a high likelihood that the defendant knew of ██████████ illegal

activities.  JA 166.  The government further stated that the defendant and █████

██████ "were part of the same conspiracy to distribute narcotics, and there is a

5

significant possibility that ████████ will be charged in connection with his

involvement in the distribution of narcotics." JA 166.

The district court conducted a lengthy hearing on the motion on October 3,

2011. JA 170-214. Part of that hearing was held *ex parte* with government

counsel, while part of the hearing was held *ex parte* with defense counsel. JA 173-

209. During its part of the *ex parte* proceeding, the government represented that it

was still investigating the case against ████████ and that there was a potential

he would be charged. JA 176. In response to the district court's questioning, the

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████. JA 180-81. The government also stated that it had information from

one or more informants that ████████ drug activity overlapped with the

defendant's and that ████████ was engaged in drug trafficking out of ████████

████████████████████████████████████████████████. JA 184.

The district court questioned Ravenell about the possibility of participating

████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████. JA 189. As the court pointed out,

6

"[I]t just seems to me that this ██████████ would be dancing all around topics that you know about as a result of a different privileged relationship. Therein the conflict." JA 189-90. Ravenell responded that he had not represented ██████████ since the latter's sentencing in 2005. JA 190. Ravenell further responded that, because ████████████████████████████████████████ ████████████████████████████████████. JA 191-92. The district court inquired of Ravenell regarding a potential situation in which Ravenell might have to cross-examine ██████████, a former client, if ██████████ decided to cooperate against the defendant. JA 196-97. Through a colloquy with the district court, Ravenell responded that he did not see that there was a conflict requiring his disqualification. JA 197-201.

The district court then addressed the defendant directly and explained that there was a possibility that ██████████ could be called as a witness against the defendant and that Ravenell would then be in the position of defending the defendant while also needing to honor his obligation to prior client, ██████████. JA 206. The defendant indicated that he would be willing to waive that conflict of interest. JA 207. The court also explained to the defendant that there was a potential conflict of interest for Ravenell to participate ████████████████ ████████████████████████████████████████

7

██████████.  JA 207.  The defendant indicated that he was willing to waive that conflict.  JA 208.

Government counsel was permitted to re-join the proceedings, and the district court then issued its ruling.  JA 209-13.  The court first noted that it had an obligation to independently determine whether continued representation by counsel impeded the integrity of the proceedings and whether counsel should be disqualified.  JA 209.  The court also noted that it had an obligation to safeguard the integrity of the proceedings.  JA 209-10.  The court explained that it could decline a waiver by a defendant where a potential conflict exists, even if it may or may not become an actual conflict.  JA 210.  The court then announced its ruling granting the government's motion to disqualify Ravenell:

> There are two circumstances that concern me gravely in this case.  The first is that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.  I've had a spirited colloquy with Mr. Ravenell at the bench with respect to some odd circumstances about all of that, but they don't dispel my concern.  I still perceive that were the circumstance to develop as I've projected, and I think it's very likely that that's how the questioning would proceed, that Mr. Ravenell would be in that circumstance where his current client is being asked about the activities of his former client, and from the period when Mr. Ravenell was representing the former client.  That, in

8

my mind, gives rise to a conflict of interest. And one that I don't think in the circumstances is waivable.

But the second scenario is an even more problematic one . . . it's been made clear on the record . . . that ███████, the former client, is currently an active subject of the Government's investigation. And there is the possibility that ████ may be charged in the current case. If not charged, there may be some other discussions with him that could result in his becoming a witness in this proceeding. And he could, in the Court's judgment, based on the information that's been shared with it, quite possibly become a witness in a trial where Greg Horne, ███████, is a defendant. That then could thrust Mr. Ravenell into the impossible position of being called upon to cross-examine former client ███████, as part of his effort to successfully defend Gregory Horne. And, of course, he can't be in that position as an attorney. He cannot be cross-examining his former client for the reason that he presumably possesses former client ███████ secrets, within the context of their attorney-client relationship from that prior time. And that is a conflict that is even more irresolvable. And what's more germane to our conversation right now, utterly unwaivable. Because to allow Mr. Ravenell to proceed in those circumstances would be, in the Court's view, to allow activities that would undermine the integrity of the very process.

JA 210-12. The district court confirmed that attorney Creston Smith, whom the defendant had also retained, remained on as counsel for the defendant. JA 213.

## III. GUILTY PLEA AND SENTENCE

On January 10, 2012, the defendant pled guilty to conspiracy to distribute and possess with intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 846, and possession of a firearm in furtherance of drug trafficking, in violation of 18 U.S.C. § 924(c). JA 59, 61-63. This guilty plea was entered into

pursuant to a plea agreement dated December 30, 2011.  JA 65, 47-58, 231-34.  As

noted above, that plea agreement contained a statement of facts that included a

discussion of the defendant's being provided cocaine by his supplier at East Coast

Customs, the defendant's auto shop located in Glen Burnie, Maryland, and of the

fact that heroin, a firearm, money, and drug paraphernalia were recovered from

East Coast Customs.  JA 55-58.  ████████████████████████████████

██████████████████████████.  JA 231-35.

On June 28, 2012, the district court conducted a sentencing hearing.  JA

264-301.  ████████████████████████████████████

████████████████████████████████

████████████████████████████

█████████████████████████████████

█████████████████████████████████

█████████████████████████████

█████████████████████████████████

████████████████████████████  The district court

sentenced the defendant to a total term of imprisonment of 188 months, the bottom

of the defendant's guideline range, and to five years of supervised release.  JA 107-08, 278.

## SUMMARY OF ARGUMENT

The district court properly exercised its discretion in disqualifying attorney Ravenell where it was clear that Ravenell had a potential conflict of interest based upon his prior representation of ███████████████████, which had the potential to develop into an actual conflict of interest.

# ARGUMENT

## I. THE DISTRICT COURT PROPERLY EXERCISED ITS DISCRETION IN DISQUALIFYING ATTORNEY RAVENELL.

### A. Standard of Review

A district court's decision to disqualify a defendant's counsel of choice is reviewed for abuse of discretion. *United States v. Urutyan*, 564 F.3d 679, 686 (4th Cir. 2009).[4]

### B. The District Court Properly Exercised Its Discretion to Disqualify Attorney Ravenell Where Ravenell Had a Potential Conflict of Interest That Potentially Could Have Burgeoned into an Actual Conflict of Interest, Based on Ravenell's Prior Representation of ███████████████████████████.

In *Wheat v. United States*, 486 U.S. 153 (1988), the Supreme Court held that "the essential aim" of the Sixth Amendment right to counsel was "to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." 486 U.S. at 159. In evaluating Sixth Amendment right to counsel claims, "the appropriate inquiry focuses on the adversarial process, not on the accused's relationship with his lawyer as such." *Id.* (internal citation omitted). The Court

---

[4] The government agrees that if this Court were to find that the district court abused its discretion in disqualifying Ravenell, that decision would not be subject to harmless error review as per *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), and that reversal would be required.

pointed out that "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id*. at 160. The Court further noted that district courts faced with ruling on potential conflicts of interest also "face the prospect of being whip-sawed by assertions of error no matter which way they rule," because a defendant may claim ineffective assistance of counsel if a district court accepts the waiver of the conflict, or conversely, he may claim deprivation of the right to counsel if the court disqualifies counsel. *Id.* at 161.

The Supreme Court explored the many pitfalls faced by a district court weighing a potential conflict of interest:

> . . . . a district court must pass on the issue of whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial contact when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants.

*Id.* at 162-63. Thus a district court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a

13

potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Id.* at 163.

In *Wheat*, counsel sought to represent petitioner Wheat after having represented two other members of a drug conspiracy, one of whom had already pled guilty and the other of whom had agreed to plead guilty. *Id.* at 155. All three had waived their right to conflict-free counsel, and petitioner argued that the "circumstances posited by the Government that would create a conflict for [counsel] were highly speculative and bore no connection to the true relationship between the co-conspirators." *Id.* at 156. The Supreme Court affirmed the district court's disqualification of counsel:

> Viewing the situation as it did before trial, we hold that the District Court's refusal to permit the substitution of counsel in this case was within its discretion and did not violate petitioner's Sixth Amendment rights. Other district courts might have reached differing or opposite conclusions with equal justification, but that does not mean that one conclusion was "right" and the other "wrong". The District Court must recognize a presumption in favor of petitioner's counsel of choice, but that presumption may be overcome not only but a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court.

*Id.* at 164.

In *United States v. Howard*, 115 F.3d 1151 (4th Cir. 1997), the defendant appealed the district court's disqualification of defense counsel. The defendant

14

had stated in response to questioning by law enforcement that he was part of a drug trafficking organization and wanted to cooperate with the government but for the fact that his counsel would inform his superiors in the drug organization. *Id.* at 1153. This Court upheld the district court's disqualification of counsel on the basis that defense counsel worked for the defendant's superiors in the drug organization, as well as on the basis that the potential need for the attorney to testify on the defendant's behalf, observing that a "district court has an obligation to foresee problems over representation that might arise at trial and head them off beforehand." *Id.* at 1155.

This Court also upheld the disqualification of counsel in *United States v. Williams*, 81 F.3d 1321 (4th Cir. 1996). There, counsel had previously represented a potential witness – the defendant's spouse – and was, at first, permitted to represent the defendant with the understanding that should the spouse testify, the defendant would get another lawyer to conduct the cross-examination and counsel would not share any privileged information with that second lawyer. *Id.* at 1323. The district court disqualified counsel "[n]otwithstanding the arrangement to bring in auxiliary counsel." *Id.* This Court held that while allowing the alternative procedure of using auxiliary counsel might have been within the district court's

discretion, "declining to use it cannot be held an abuse of that discretion." *Id.* at 1325.

In *United States v. Basham*, 561 F.3d 302 (4th Cir. 2009), the district court disqualified counsel prior to trial "out of an abundance of caution" based on the potential conflict posed by the possible admission of statements by counsel regarding the "hypothetical" actions of a co-defendant and despite the defendant's statement that he wanted to retain his counsel. *Id.* at 322-23. The district court later found the statements by counsel inadmissible. *Id.* at 324. Nevertheless, this Court found that the district court had not abused its discretion and held that "*Wheat* and our precedent counsel deference to the district court in this area, particularly in anticipating potential conflicts before they come to bear." *Id.*

Thus, as this Court stated explicitly in *Basham*, both Supreme Court and Fourth Circuit precedent grant deference to a district court's decision to disqualify counsel and empower the court to disqualify counsel even where the defendant has waived his right to conflict-free counsel and the conflict is potential and "may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163. Thus, contrary to the defendant's assertion, a potential conflict that has not yet materialized into an actual conflict *can* provide justification for disqualification of counsel. Here, the district court was faced with several potential conflicts posed

16

by Ravenell's continued representation of the defendant: (1) Ravenell might be forced to cross examine his former client ████████ if ████████ were to become a witness in the case; (2) Ravenell might face competing loyalties between his former client and his current client in a situation where ████████████ ████████████████████████; and (3) ████████ was potentially involved in paying for Ravenell's services.  *See Urutyan*, 564 F.3d at 687 (affirming district court's disqualification of counsel on the basis of "the great likelihood" that counsel was being paid by another member of the criminal enterprise, which would "create a serious potential for conflicts of interest").  Both published cases in other circuits and unpublished cases of this Court have upheld disqualifications of counsel based on similar potential conflicts of interest.[5]

---

[5]      *See*, *e.g.*, *United States v. Fowler*, 491 Fed. Appx. 453, 454, 456 (4th Cir. 2012) (unpub.) (disqualification of retained counsel upheld based on retained counsel's "previous and continuing professional association with counsel for Fowler's co-defendant, his father); *United States v. Williams*, 439 Fed. Appx. 254, 256 (4th Cir. 2011) (unpub.) (disqualification of retained counsel upheld on basis of potential conflict posed by her *prior* representation of a potential government witness, the defendant's father); *United States v. Stanley*, 256 Fed. Appx. 583, 584-85 (4th Cir. 2007) (unpub.) (no abuse of discretion to disqualify federal public defender even where less drastic measures were available and government did not call the witness represented by a fellow federal public defender); *United States v. Self*, 681 F.3d 190, 198-99 (3d Cir. 2012) (disqualification of counsel upheld after lawyer in counsel's firm who represented a co-defendant moved to withdraw); *United States v. Cain*, 671 F.3d 271, 295-96 (2d Cir. 2012) (disqualification of counsel who was potentially a witness upheld even though district court later concluded it was unnecessary to compel counsel to testify); *United States v.*

17

Nevertheless, the defendant relies principally on a case out of the Seventh Circuit to support his argument that the district court abused its discretion in disqualifying Ravenell. In *United States v. Turner*, 594 F.3d 946 (7th Cir. 2010), the district court disqualified counsel, who represented co-conspirators in a drug conspiracy. *Id.* at 947. The court held that a district court, prior to disqualifying counsel based on a potential conflict, must evaluate three factors: (1) the likelihood that the conflict would actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether alternative measures were available. *Id.* at 952. The Seventh Circuit ultimately found that the district court disqualified counsel on the mere possibility that either co-defendant would cooperate with the government and thus "essentially applied a rule that joint representation *necessarily* violates the defendant's right to effective counsel." *Id.* at 954 (emphasis in original). In short, *Turner* Court found that the district court had not adequately assessed the likelihood that a potential conflict would burgeon into an actual conflict.

---

*Alfonzo-Reyes*, 592 F.3d 280, 294-95 (1st Cir. 2010) (no abuse of discretion in disqualifying attorney who had previously represented potential government witness who ultimately was not called to testify); *United States v. Gharbi*, 510 F.3d 550, 553-54 (5th Cir. 2007) (no abuse discretion in disqualifying counsel who had already represented another co-defendant and a potential witness, the defendant's daughter); *United States v. Swafford*, 512 F.3d 883, 839-41 (6th Cir. 2008) (disqualification of counsel upheld even where defendant specifically disclaimed any intention to raise an "advice of counsel" defense).

To the extent that *Turner* is read as a *per se* prohibition against disqualification of counsel based only upon potential conflicts, that clearly is not the law under *Wheat* and this Court's precedents.[6]  Moreover, neither *Wheat* nor this Court's precedents in *Howard, Williams, Basham*, and *Urutyan* have laid out specific *Turner*-like factors that district courts must assess in deciding whether counsel should be disqualified.  Indeed, the Supreme Court has held that a district court "must be allowed substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163.  In any event, *Turner*, an out-of-circuit case, "has no precedential value" in this Court.  *United States v. Shepperson*, 739 F.3d 176, 179 (4th Cir. 2014).

More importantly, there was only one potential conflict in *Turner* whereas, here, the district court faced at least three potential scenarios in which Ravenell's representation of the defendant could trigger conflicting interests: (1) Ravenell's

---

[6]     Indeed, as the Tenth Circuit has observed, disqualification of counsel in *Wheat* was based on potential conflicts that were far from certain to materialize and, in fact, appeared unlikely.  *See United States v. Evanson*, 584 F.3d 904, 910-911 (10th Cir. 2009) (noting that the emergence of the potential conflicts in *Wheat* "were far from certain").

potentially having to cross-examine his former client ███████ at the trial of his

current client, the defendant; (2) Ravenell's participation in ███████

███████████████████████████████████████

███████; and (3) the strong likelihood that ███████ paid or participated in the

payment for Ravenell's services.  The district court was confronted with a situation

in which there were *several* ways in which a conflict of interest might arise.  As

this Court has stated, "[S]erious ethical problems can arise from the joint

representation of multiple codefendants."  *Hoffman v. Leeke*, 903 F.2d 280, 289

(4th Cir. 1990).  This Court has also held that a trial court "is not to weigh the

circumstances [regarding disqualification of counsel] with 'hair-splitting' nicety."

*United States v. Clarkson*, 567 F.2d 270, 273 n. 3 (4th Cir. 1977).[7]

The defendant contends that Ravenell would not necessarily have been

prohibited from cross-examining ███████, citing *Mannhalt v. Reed*, 847 F.2d

576 (9th Cir. 1988) and *United States v. Cunningham*, 672 F.2d 1064 (2d Cir.

1982).  Def. Br. 27.  However, both *Mannhalt* and *Cunningham* are clearly

distinguishable.  In *Mannhalt*, the petitioner argued that he was denied effective

---

[7]     Courts are also to review the decision to disqualify counsel based on the
information known at the time of the decision and not based on events occurring
after the fact.  *See Alfonzo-Reyes*, 592 F.3d at 294 ("a district court's decision to
disqualify counsel is based on the facts presented at the time of the disqualification
motion, and does not turn upon subsequent events at trial—i.e., whether the
witness ultimately takes the stand"); *Cain*, 671 F.3d at 295.

assistance of counsel because his attorney represented the key government

cooperating witness in a prior unrelated case and briefly at the witness's

arraignment and line-up in the charged case. 847 F.2d at 579-80. The Ninth

Circuit held that the prior representation was completely unrelated and that the

petitioner had not shown that any privileged information was either divulged or

withheld – so no actual conflict existed. *Id.* at 580. Moreover, to prevail on his

claim, the petitioner had to prove an actual conflict existed that adversely affected

his lawyer's performance. *Id.* at 579. Here, the district court had the latitude to

disqualify Ravenell for potential conflicts. In addition, ███████████████████

████████████████████████████████████████████████████████████ –

charges very similar to what the defendant was facing in this case. Therefore, far

from being unrelated to the instant case, ████████████ prior case appeared quite

relevant to the defendant's charges.

In *Cunningham*, the Second Circuit reversed the district court's decision to

disqualify counsel who had a long-standing relationship with the defendant of

more than six years and where a public record had been created during the

testimony of counsel's former-client-turned-government-witness, which could

serve as the basis for any cross-examination by counsel of his former client. 672

F.2d at 1070, 1073 n.8. Here, ██████████ pled guilty, so there was no public

record to which Ravenell could be limited in any cross-examination of ███

███. Rather, Ravenell would almost certainly have had to draw upon privileged

information in cross-examining ████████. In addition, there was no record

made that the defendant had any long-standing relationship with Ravenell, and

Ravenell was in any event disqualified relatively early in the life of the case.[8]

Finally, the defendant claims that the district court abused its discretion in

ordering Ravenell's disqualification, where other alternative measures were

available such as having Ravenell absent himself from ████████████

████████████████████████████. *See* Def. Br.

27. However, in *Williams*, this Court specifically held that, even where alternative

measures to disqualification are available and might be within a district court's

discretion, "declining to use it cannot be held an abuse of that discretion."  81 F.3d

at 1325.

## CONCLUSION

For the reasons stated in the government's pending motion to dismiss, this

appeal should be dismissed on the basis of the appeal waiver to which the

---

[8]    Indeed, it is likely that the district court considered the disadvantage of waiting until a potential conflict blossomed into an actual conflict before disqualifying Ravenell, which would only have served to sever an even stronger and tighter relationship between Ravenell and the defendant.

defendant agreed in his plea agreement.  Alternatively, for the reasons set forth

above, the judgment of the district court should be affirmed.

                                        Respectfully submitted,

                                        Rod J. Rosenstein
                                        United States Attorney

                                        _____/s/_____
                                        Ayn B. Ducao
                                        Assistant United States Attorney

May 6, 2014

## STATEMENT WITH RESPECT TO ORAL ARGUMENT

The United States respectfully suggests that oral argument is not necessary in this case. The legal issues are not novel, and oral argument likely would not aid the Court in reaching its decision.

## CERTIFICATE OF COMPLIANCE

1.     This brief has been prepared using **Microsoft Word, Times New Roman, 14 Point.**

2.     EXCLUSIVE of the corporate disclosure statement; table of contents; table of citations; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, the brief contains **5,384** words; I understand that a material misrepresentation can result in the Court's striking the brief and imposing sanctions.  If the Court so directs, I will provide an electronic version of the brief and/or a copy of the word or line print-out.


_____/s/_____

Ayn B. Ducao
Assistant United States Attorney

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 6, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF user:

> Kenneth W. Ravenell, Esq.
> Milin Chun, Esq.
> Murphy, Falcon & Murphy
> One South Street, 23rd Floor
> Baltimore, Maryland 21202
>
> Creston Smith, Esq.
> Silverman, Thompson, Slutkin, White
> 201 N. Charles Street, Suite 2600
> Baltimore, Maryland 21202
>
> *Counsel for the Defendant*

I FURTHER CERTIFY that on May 6, 2014, I caused the required copies of the Sealed Brief of the Appellee to be hand-filed with the Clerk of Court and a copy of the Sealed Brief to be served, via electronic Mail, upon counsel for the appellant.

_____/s/_____
Ayn B. Ducao
Assistant United States Attorney